The next case called is 122046 in re Marriage of Goesel, Goesel, um, Agenda Number 17. Counselor, are you ready? Yes, sir. And are you? You may proceed. Good morning, Your Honors. My name is Mark Ellis. I will present Christine Goesel on this matter. The matter before the court is the issue of whether or not fees paid and earned by an attorney in a dissolution of marriage matter prior to entry of a judgment for dissolution are available for disgorgement. In this matter, the petition for dissolution of marriage was filed in January of 2013. There was significant litigation, for lack of a better word, between January of 2013 and March of 2014. Ms. Howell entered her appearance on behalf of Dr. Andrew Goesel in October of 2013. Christine Goesel's attorney withdrew from the matter in approximately February of 2014, and the Law Office of the Federal Attorney's Office entered their appearance on behalf of Christine Goesel in March of 2014. Shortly after entering its appearance on behalf of Christine Goesel, the Law Office of the Federal Attorney's Office filed a petition for interim fees, and that was in June of 2014. From February of 2014 until the filing of the petition for interim fees, Dr. Goesel had made numerous representations to the court which are reflected in the record, one of which being that he was unable to pay child support because of his lack of income. The trial court found it appropriate to order that child support be paid from retirement assets by Dr. Goesel and entered an order on February 20, 2014, requiring that he do so. I believe the amount was $3,500. There are also representations made by Dr. Goesel through pleadings that the parties were in dire financial straits and that marital residence should be sold. In June of 2014, it came to light that Dr. Goesel had actually liquidated nearly all of the retirement assets of the parties, and he had used those retirement assets, which were marital, for various reasons, unbeknownst to Christine Goesel. Immediately upon finding that out, a petition for temporary restraining order was entered. That was filed and entered on approximately June 17, 2014. Nearly all of the marital retirement assets were gone at that point. Christine Goesel did have her retirement assets. I suppose she also would have had access if she had chosen to liquidate them. Her retirement assets were slightly over $100,000, maybe $140,000. Dr. Goesel's retirement assets that he had liquidated, he netted over $190,000. The total amount liquidated was probably close to $300,000 worth of retirement assets. When the court heard interim fees are in the interim, Ms. Howell filed a motion to withdraw as Dr. Goesel's attorney. Mr. Howard Levine had already entered his appearance in June of 2014. Ms. Howell was granted leave to withdraw on June 20, 2014. In the order granting Ms. Howell's withdrawal from the case, the court reserved jurisdiction to address the disgorgement at that time. The matter proceeded to hearing in July of 2014. The trial court ordered that Ms. Howell pay the amount of approximately $40,000 as disgorgement to Christine Goesel. That amount wasn't paid. A petition for indirect civil contempt was filed against Ms. Howell. The court found Ms. Howell in indirect civil contempt and the appeal filed. The 3rd District found that the funds were not available following Altman and Block. This is contrary to what was found by the 2nd District in remarriage of squire, which found that in the 2nd District's words, available in the Section 501 for interim fees meant that funds exist somewhere. So the matter before the court is what does available mean? And it will have great impact on the practice of dissolution of marriage trades throughout the state. Understandably, dissolution of marriage attorneys are concerned about getting paid, earning their fees, and later finding out that they have to repay what they earned. On the other side, as is the case in this matter, we have an issue where the marital state has been greatly depleted. Dr. Goesel stands before the court and says, I no longer have an ability to pay. All my funds are gone. Christine Goesel, under the statute, is currently, once it's found that she's unable to pay her fees, should be awarded interim fees. But you have a litigant that's saying, I'm no longer able to pay. They're all gone. If this court finds that those funds are not available and have been paid to Ms. Howell, then essentially it defeats the purpose of the statute. Because Dr. Goesel would have liquidated the retirement assets by his choice. Obviously, they would have been available when he liquidated them because he chose to do so under Umbrella, but he spent them. Is there any question that the fees were earned? No. The fees were earned by Ms. Howell at that time. So are you suggesting that in a dissolution case, an attorney representing a client in a dissolution matter has to keep the fees in a trust account until the matter is entirely concluded? No. No, Your Honor. So how do we deal with it when, I take it Dr. Goesel couldn't have gotten a refund from Ms. Howell of what he paid for what she did, right? Well, I think there would be an issue between Dr. Goesel and Ms. Howell. I'm sure Ms. Howell's position would be she earned the fees and so she's not going to refund him the money. That's correct. And I think you said that it was understood that the fees had been earned. So he wouldn't be entitled to a refund. How can she be ordered to pay over money that she's earned? Well, and that's the question before the Court because then it runs into the statutory framework as well as Section 508 of the Marriage Act, which has to do with one or final fees set and the case law, which provides that interim fees, basically a warrant of interim fees is just setting the timing of payment. That's all it addresses. It doesn't address an attorney's right to get paid at the end of the case to determine what fees that attorney is entitled to. Mr. Ellis, before we get off of the question asked by Justice Garmon, she asked whether they would have to be put in a trust account and you said no. You also prefaced your comments by whatever decision this Court makes, it's going to have an impact on attorneys in matrimonial law for sure. So I just want to change your question a little bit. Would they be put on notice that if we ruled in favor of your position that if they spend the fees that they've earned, they do it at their own peril regardless of having to put it in a trust account or not? They're pretty much put on notice that, hey, you better put those aside somewhere. I think most family law attorneys, if they got paid $35,000 within three months, would understand that those funds may be subject to disgorgement. But also, Your Honor, it comes down to I think it would, if the Court ruled in that manner, it would put attorneys on notice and it would facilitate the very purpose of the statute. If I received $35,000 or $40,000 and I knew it was subject to disgorgement, I would tell the other side or I would tell the Court I get this money or I could file a petition. I need to allocate this money. I want to apply it towards my fees. This is a case where there may be no marital estate and they have nothing left. Would this lead to problems for small firms and solo practitioners? What if the attorney has already put the earned fees towards overhead and expenses and simply doesn't have enough money on hand to pay back what's ordered? I think then the issue comes down to, Judge, not whether or not the funds are available or not. The question would be then if the Court deems that those funds are available, if it's appropriate to order disgorgement under that situation. And it's raised in Altman and Block. The question is, what if an attorney received funds, fees, two years ago? Should we order disgorgement on those fees that have clearly been applied towards the balance new? And it may be as much as two years ago or an attorney that's withdrawn. Should we order those fees? I think then it's up to the trial court to say, it's not appropriate under those circumstances. We're not going to order disgorgement at that point. Whereas in this case, an attorney received more than $35,000 in fees between March and July of 2014, where a trial court, I think, should have the discretion or the ability to say, under these circumstances, I'm going to find that disgorgement is appropriate. So is that the rule you're asking us to articulate in this case? I'm asking the Court not to find as a bright-line rule that those funds are unavailable. That way it would leave the discretion to the trial courts to determine whether or not disgorgement is appropriate. Counsel, can you reconcile what you're saying with the Rule of Professional Conduct 1.15 that discusses how attorneys are to hold client funds? There's a security retainer versus an advance payment retainer. Where are you, under your theory, the attorney earns the fees, but still has to somehow isolate those funds in case something happens in the future. Is that anticipated by the rule? I don't know that I'm suggesting that an attorney has to isolate those funds. I think an attorney in a divorce case, a dissolution of marriage case, understands if they get paid those amounts, as a practical matter, they may be subject to disgorgement. And if they apply those fees towards costs, that may be subject to being recouped by the trial court and allocated among the parties. Because in this case, especially, there were marital assets. So these are the parties' assets that once I decided he was going to use to pay attorneys and essentially blocked access for Christine to those same assets to use for her attorney's fees, which leaves her in a position where she either, of course, we could have withdrew from the case. We did not. Or if we did, she would have had to find alternative attorneys. And then, when she's talking to alternative attorneys, they would know they had to file a petition for interim fees if there's no retainer available. If they file a petition for interim fees after finding that there's no marital estate and there's no ability for anyone to pay and you can't disgorge a prior lawyer, she's going to be left without potentially being able to retain an attorney. And that is directly against what the statute is meant to address. Does early wine fit this scenario? Early wine is not directly on point. Because early wine only addressed an advance payment. Future fees, not fees that have already been earned, right? Right. And the issue is, under early wine, I believe, Your Honor, the fact that the decision isn't based upon who owns the funds. Because under an advance payment retainer, the attorney owns the funds. And as the amici set forth. But it's still subject to disgorgement. It is. Under early wine. Yes. Because it's for future payment. Right. Drawdown. Yes, Your Honor. Because amici argue that even though an attorney may own those funds, it's still subject to being refunded to a client if they're not billed against or credited towards outstanding fees. And so they are sitting essentially, even though it may be in an attorney's general account, they belong to an attorney, they still haven't been billed against. So that amount, the amici says, that amount that hasn't been billed against would be subject to disgorgement, without the amount that has already been applied. I believe Altman also addresses this issue interestingly. Not only is it on point, but the footnote in Altman, the first is to actually acknowledge that if it was a matter of equity, they'd be tempted to uphold the disgorgement. That's footnote four. But they believe that in the summary proceeding set forth in the interim fee award, that it shouldn't address the issue that is in this case and was in Altman, where all the available assets and marital assets had basically been exhausted. But that is exactly when the court should address that issue. Because if the court doesn't address it in an interim fee issue, it's left to address it at the end, which it clearly can do under 508. But then the litigant that is on the wrong side is going to be denied access to an attorney potentially. So it should be addressed at the stage of the interim fee hearing rather than waiting for the end. I think it's also important for the court to note that in this matter, Judge Archambault specifically found Ms. Hallel incontent. And that was based on the failure to repay the disgorgement amount. But there's also the issue that there were fees outstanding that Ms. Hallel still had an amount of $13,000. That $13,000 admittedly had not been applied yet because they were disputed in Ms. Hallel's own words. So they were sitting, they were in her, whether it's her operating account or her trust account, they were there. Ms. Hallel didn't pay anything towards the disgorgement. Even though those $13,000 clearly had not been applied to Dr. Gaines's bill, according to Ms. Hallel, it was disputed whether those fees should be applied towards prior attorneys' fees or Ms. Hallel's fees, but they weren't applied. So under any scenario, those fees would have been available and they should have been repaid. An attorney should have repaid that $13,000 and then said, Judge, this is the reason I'm not going to repay the remaining amount, the $27,000, because I believe that those were earned fees, they've been applied, and they're not subject to disgorgement. Then it could have come up on appeal. There's a case where there's a, quote, friendly contempt finding. That is not this case. There were funds that should have been repaid. They were not, and Judge Archibald found Ms. Hallel in contempt. Is it clear from the record whether that $13,000 was earned either by Attorney Hallel or Babcock? I think you can read from the record that those were fees owed to either Ms. Boback or Ms. Hallel. That there was a balance on Ms. Boback, and I think actually the record does show that there was a balance due to Ms. Boback, and that that $13,000 was to be owed to Ms. Boback or to Ms. Hallel's outstanding fees, but they had not yet been done so at the time of the interrogation. So does that make those fees stand in a different position because they've not been assumed or used by either of the attorneys? That's a good question, because then if we go down the road where these funds are not available, then the question before courts is going to be, well, what if I've earned fees that are still in my trust account? And I just happen not to apply those yet because we've got to do it at the end of the month. The petition for interim fees was filed on the 15th of the month. I apply it, and I do my billing at the end of the month. So even though I've earned the fees, they're still in my trust account. Are those then subject to disgorgement? Are those unavailable? So trial courts are going to have to parse this out and say, well, when were they applied? And the 3rd District actually did start to address this because the 3rd What if the petition for interim fees is filed in June, I don't address it until August, and $5,000 is paid in the meantime? Our position would be, of course, under any scenario, that the $5,000 would be subject to disgorgement because it's paid while you're on notice that there's an interim fee petition pending. But, Your Honor, I agree with you that that is an issue. Those fees, even though we know that it was for a balance due, they were not the attorney's yet because they hadn't been applied. And the record is clear that Dr. Gazel had not been credited for that balance at that time. So they were subject to disgorgement would be our position, even if the court finds otherwise regarding the fees that had been applied that those are unavailable. You indicated that the attorney's fees were earned. Is there any question about the reasonableness of the fees? And does that factor in? And does all of the information you gave us about where the funds came from, does that factor into the simple question of whether these fees are subject to disgorgement? It was stipulated as for the purposes of the interim fee hearing that the fees were reasonable necessity. That was the stipulation. In terms of the other, you talked about where the funds came from, from marital assets. Is that important unless we adopt the rationale that there should be no bright-line rule and everything comes into play? Under early buying, it's not important or it's not relevant whether it's marital or not. It seems that it would be important in a situation like this where marital assets were used and marital assets, at least at the time prior to entry into judgment, for allocation belong to both parties, that it would be important for a court to know and consider that these were the marital assets. These are now exhausted. They've been applied. Now the other litigant doesn't have access to those marital assets. I think that is relevant under this situation. It's something that a trial court should consider because it knows it would have to allocate the marital estate at the end as it is. It's very few cases where you allocate 0% of a marital estate or a significantly smaller proportion of the marital estate to one of the litigants. I don't believe this would have been a case where Christine would have gotten a smaller percentage of the marital estate. Your Honors, we are asking that you reverse the Third District appellate court, find that those funds were available to be discouraged, and also reverse the vacating of the contempt line. Thank you, Your Honors. Thank you. Good morning, Justices. May it please the Court, my name is Gina Colaluca, and I represent the appellee, Ms. Laura A. Howell, who is present in court this morning. I'm not going to stand here and recite the facts to you because I know that you already know them, but I would like to clarify a few facts that were stated by opposing counsel to you this morning. It is not true that Ms. Hazel's former counsel, Ms. Sterk, withdrew from this case in February 2014. Rather, Ms. Sterk was disqualified from the case for wrongdoing committed by Ms. Hazel and Ms. Sterk. And Ms. Howell represented Dr. Hazel throughout the disqualification proceedings. Of the $51,382 that Ms. Howell had billed and had earned and had been paid throughout this litigation, $37,094.49 was incurred throughout the disqualification proceedings because they were hotly contested. Counsel had filed a motion to strike, a motion to dismiss, a motion for partial summary judgment, at one point even tried to disqualify Ms. Howell, and when they were unsuccessful on those matters, they finally answered the motion. There was a hearing on the motion, and Ms. Sterk was disqualified. Another clarification is counsel's claiming that this court shouldn't make a bright-line rule that funds paid to and earned by an attorney for past services rendered are not available to be discouraged under the statute because in this case, it should have been considered that there was no marital estate left for Ms. Hazel to get at the end of the case. That's not true either. The record clearly shows that Dr. Hazel only used his own retirement accounts to not only pay his attorneys, some of it did go to the attorneys, but the overwhelming majority of it went to marital expenses. He was paying the mortgages, his own rent, grocery bills, utility bills, out of those funds because the parties were in dire financial straits at the time. Ms. Hazel had quit her job, and Dr. Hazel's business wasn't doing well. So he only did that as a last resort to actually maintain the family expenses. In addition to that, there was still over $137,000 left in Ms. Hazel's retirement that she had access to. There was over $310,000 in equity in four different real estate properties, and Ms. Hazel also had a checking account. There were four vehicles that were worth over $30,000. So my point to this court is that there was plenty of marital assets from which Ms. Hazel could be remitted. So to suggest that this case brings up some special exception to what the statute actually says, and that we shouldn't have under the statute that fees paid to and earned by an attorney for past services should somehow be available in situations like this, the argument fails because the facts that are stated by counsel are true. There was plenty of marital estate to be recouped at the end of the case for Ms. Hazel. I'm getting to the heart of the argument. As counsel indicated, the issue before this court today is what types of funds are available to be disgorged under the statute when both parties are found to be incapable of paying their own attorney's fees. The only facts that this court needs to concern itself with in answering that question is that Ms. Hazel's fees were stipulated to be reasonable and necessary at the time of the hearing. Now the legislature used the term available for a reason. If the legislature intended funds to be available to be disgorged, it also intended some funds to be unavailable to be disgorged under Section 501C-3. The only logical interpretation of this fact is that fees earned by and paid to an attorney for past services rendered are not available to be disgorged under the statute, whereas fees that are previously paid to an attorney, whether in the form of a retainer or an interim payment or both, that have not been earned are going to be available to be disgorged under the statute. Ms. Cole, the second district in Squire, and obviously we do have conflicts among the districts here, believe that equating available with unearned would mean, and you mentioned voluminous pleadings, and they commented on that. They said that would mean that attorneys would file voluminous pleadings and motions early in a case to earn the retainer, thus leaving the other spouse to respond to a mountain of paperwork with little chance of obtaining the resources to do so properly. Do you think that was a legitimate concern that the second district had as to the practical effect of this? Of course I think that's a legitimate concern, but I also respectfully disagree with how the second district handled it because there are other ways to rectify the injustice that happened in the Squire case. In that case, we had an attorney claiming that he had billed and had already been paid and had already earned $120,000. The other side was claiming, wait a second, I've only billed $55,500 and I've only been paid $2,500. That on its face looks unreasonable, that the attorney was claiming that he had actually billed $120,000, whereas another attorney was claiming on the same case they only billed approximately $55,000. The second district was concerned with this idea that an attorney, if they know that fees that they earn are not going to be available to be discouraged, they will intentionally use up the retainer quickly to avoid being discouraged. Rather than say that fees earned by and paid to an attorney for past services rendered are available to be discouraged, which raises several issues that I will get into, what the second district could have done is determined that the Stoddsville firm's fees in that case were not reasonable or necessarily billed. An attorney must reasonably and necessarily bill their files. If their fees are not reasonable and necessary, the attorney hasn't truly earned those fees. And if the attorney hasn't truly earned those fees, they are subject to reimbursement to the client. If those fees are subject to reimbursement to the client, then those fees are available to be discouraged. So while I agree, I understand the second district's concern in that case, I feel the second district could have easily determined that the Stoddsville firm's fees were not reasonable and necessary and then refunded the client in that manner to level the playing field. Stating that, the meaning of the term available means the funds simply exist somewhere, renders the term available new. And as this court knows, the reviewing court must give effect to every word and clause and phrase used by the legislature. Now available means present or ready for immediate use, accessible, obtainable. By saying in Squire that available means the funds exist somewhere, it means the funds could exist anywhere. By way of example, Dr. Giesel paid Ms. Howell and she had earned that fee that was stipulated. Let's say she pays herself. She then pays her mortgage. Her mortgage company then pays its employee. Its employee goes across the street and gets a coffee at Starbucks. The money's now at Starbucks. Is that money accessible or obtainable by the parties to fund their litigation? Is that money accessible or obtainable to Ms. Howell, the attorney being discouraged, to give it back? Of course not. But the funds exist somewhere. They exist at Starbucks. So that's the problem with the second district's decision. It renders the term available completely new. How do you respond to, and I believe Mr. Ellis briefly referenced this, but in his reply brief, here's a quote from it, to argue that an attorney that receives over $65,000 from January to June of a given year while representing in the court through filings on behalf of her client, that her client is in dire financial straits, is not subject to discouragement, is absurd, such a consequence is exactly what the legislation was enacted to avoid. How do you respond to that comment? That comment is loaded with facts that we would dispute. First off, Ms. Howell, the evidence at the hearing on the petition for interim fees, the evidence showed that she had only earned $51,382. She didn't earn over $66,000, or she wasn't paid and had earned over $66,000. And the reason for that, counsel had addressed this idea of this $13,000 that Ms. Howell was holding. And while it is true she was holding that money at the time of the hearing, the dispute that Ms. Howell referred to was between two attorneys, not between the client and the attorney, but between two attorneys. What had happened is Dr. Gaisel had paid Ms. Boback approximately $33,000 for fees that Ms. Boback had already earned. Ms. Boback then gave $13,000 to Ms. Howell for Ms. Howell to apply to her bill. Ms. Howell thought that was done at Dr. Gaisel's direction, but she later found out that Ms. Boback had done this out of the kindness of her own heart and wanted to ensure that Ms. Howell would be paid, because Ms. Boback and Ms. Howell are friends. And so Ms. Boback, it's important to understand that once those fees were paid to Ms. Boback because Ms. Boback had earned them, those fees belonged to Ms. Boback. And she was free to do whatever she wanted with them. So when she gave them to Ms. Howell, she was free to do that. And she was free to do that under the Rules of Professional Conduct 1.15c. This rule authorizes attorneys to withdraw funds from the retainer as they earn them. So the attorney decides what they have earned, and then they can take the money and do whatever they deem fit with it. Ms. Boback had already earned that money. So when an attorney takes money that they earned, it belongs to them. Because the money belongs to the attorney, the money is not acceptable or obtainable to the parties to fund their litigation. Otherwise, if we hold otherwise, we're telling attorneys that you have to take your own money and your own property that you have earned under a contract with your client and return it to the client to fund the client's litigation with your own money. We're making attorneys pay for their client's own litigation. One more quote for you, then I'll let you go. So I assume you're going to say that the Altman dissent was wrong. And I'll give you that quote in a minute. And when you tell me it's wrong, tell me why it's wrong. They said, as Section 503 allows for a claim to be made for contribution and that a disgorgement order is temporary in nature, the attorney has by statute the right to recoup all reasonable fees he or she may be owed. Under Section 508, the court must make a determination of reasonableness and necessity in a final judgment. Until then, there has been no final determination of the attorney's earned fees, and there has been no determination of the reasonableness or necessity of the fees that the attorney allegedly earned. Where did they get it wrong? Respectfully, Justice Kuczynski's dissent got this wrong in two aspects. The first is that this idea that an attorney hasn't truly earned a fee until the end of the case because that's when there's this determination of what's reasonable and necessary. That's not true. As I just stated, Rule 1.15c, this court's own rule, authorizes attorneys to make that decision themselves. They're allowed to withdraw their fees from the retainer account as they earn them. I also agree with the Amici grief on this point that realistically, in most cases, the reasonableness and necessity of an attorney's fees aren't going to be called into question. Even though the incident matter was hotly contested, that fact wasn't called into question. Ms. Howell's fees were stipulated to be reasonable and necessary, even in this contentious of a case. And so this idea that we have to make this determination at the case is not realistic because in most cases it's not going to happen. Additionally, where I respectfully disagree with the dissent, is the idea that this fee shifting that takes place, it's only going to be a temporary taking of the attorney's property. All of this is temporary. The attorney can true up at the end of the case and still get paid. I have two points on that. The first is that the United States Supreme Court stated in Fuentes v. Shevin that even temporary takings of property can have constitutional due process concerns. And if the funds are earned by the attorney, belong to the attorney, and they're free to do whatever they want with that money, even if we only take that property in the interim until the end of the case and pay back the attorney at the end, it's still an unconstitutional taking without due process. And this court has to interpret the statutes to avoid constitutional problems. In addition, we have to ask ourselves how realistic it is that the attorney is going to be paid at the end of the case. In order to disgorge an attorney in the first place, the court must find that neither party is capable of paying their attorney. So if we already have this finding out there that the parties are incapable of paying, how realistic is it that the attorney is going to be paid at the end of the case? If anything, there's going to be even less access to resources because the parties have been litigating this whole time. So I respectfully disagree with the dissent, and I think it doesn't address the constitutional issues that can result from holding that fees earned by and paid to a party's attorney for past services rendered are available to be disgorged. Another constitutional concern that's raised is the contract clause. Attorneys enter into a contract with their client to provide legal services for money. If we are going to disgorge the fees that they earn under the contract, we are taking the money that they have earned under the contract and saying, you need to give it back to the client even though you've held up your end of the bargain. Why have a contract at all at that point? All this does is turn the contract on its head. Another concern, and this was addressed by the first district in Altman, is because an attorney, as they earn their fees, they're allowed to utilize those fees as they see fit because the property belongs to them. What happens when they use the fees to run their businesses? The first district recognized that attorneys, and in particular small firms and solo practitioners like Ms. Howell, are likely going to use the fees that they earn as they earn them to run their businesses. And if we disgorge the fees that they have already earned, and they've already used that money to run their business, can that attorney still be held in contempt? That's what happened in this case. Ms. Howell was paid gradually over the course of nine months of representation. Ms. Gazel didn't bother to file her petition for interim fees until 17 months into the litigation. I know counsel stated, wait a second, she filed three months after I came into the case, but that's not where the clock starts. Ms. Gazel filed her petition for dissolution of marriage in January 2013. She did not file a petition for interim fees until June 2014. By that time, Ms. Howell had already been paid, she had already earned the fees, and she had already used those fees. We know this because Ms. Howell told us so. When the circuit court held Ms. Howell in contempt, she said, I'm not willfully disobeying your order. I don't have $40,000 to give them. The money's gone. I don't have it. The circuit court held Ms. Howell in indirect civil contempt and sentenced her to an indeterminate amount of jail time anyways. And by doing that, this is what the circuit court was essentially saying. I understand that you've already earned these fees because it's been stipulated your fees were reasonable and necessary. I also understand you've already lawfully spent those fees under Rule 1.15C because you've told me so. But I'm going to hold you in contempt and sentence you to jail anyways because you spent your own money as you were lawfully allowed to do so. And now you don't have the money to give it back to fund the participation. What an absurd result. That can't possibly be what the legislature intended. Because if it is, we're putting attorneys in a precarious position where they have to decide whether to hoard their fees and allow their businesses to go under because they're not running their businesses, or use their own property at their own risk. Now I'd like to very briefly address EarlyWine as that question was brought up earlier. For what it's worth, I agree with this court's decision in EarlyWine. But it's important to know that all this court decided in that case is that advanced payment retainers can be subject to disgorgement. It didn't discuss what the term available means under the statute and which funds would be available for disgorgement. And it didn't discuss whether the attorney in that case had actually earned their fees. Because advanced payment retainers, although they become the property of the attorney upon payment, it's a fictitious property interest. And it's only designed to ward off creditors. The attorney doesn't actually get to use those funds and those funds don't actually belong to the attorney until the attorney earns them. So advanced payment retainers are like any other retainer. Any earned portion of that retainer would not be available to be disgorged. But any unearned portion would be available to be disgorged under the statute. Now this court may uphold the reversal of the circuit court's disgorgement order for any reason. If for some reason this court finds that fees earned by and paid to an attorney for past services rendered is available to be disgorged under the act, I would urge this court to look at the record in the case and for all the assets that I described in the beginning of my argument, the $310,000 in real estate, the checking accounts, the vehicle values, I would urge this court to consider that the parties were capable of paying their own attorney's fees such that Ms. Howell's attorney's fees would still not be disgorged. Finally, I'd like to address this idea that Ms. Howell did not bring this appeal in good faith. Respectfully, Ms. Howell prevailed at the third district. We are now standing in the highest court in the state because three districts are split on what the word available means in the statute. We have no direct precedent on what funds are available to be disgorged. As a result, I think this appeal was brought in good faith. We have no direct precedent. I see my time is up. I would just ask this court to hold that funds paid to and earned by an attorney for past services rendered are not available to be disgorged under the act, to uphold the third district's reversal of the disgorgement order entered in this matter, to uphold the third district's decision to vacate the findings of contempt, and to release the appeal. Thank you. Thank you. Mr. Ellis, reply? Just briefly, Your Honor. I think the second district raised a concern. I don't know if they specifically stated, but they alluded to the issue of churning. I don't know that it's an issue of whether or not attorneys, and I wouldn't say that family law attorneys are going to churn cases or try to bill an excessive amount to eat through the retainers. I think it is a concern, given the nature of a dissolution of marriage case, what happens once you're paid with your retainer. What happens is you have to prepare your petition for dissolution of marriage. You customarily prepare either a petition for temporary relief or some other petition for allocation of marital expenses. You prepare under numerous local rules. You have to start preparing for the financial updates of the parties. You start preparing for discovery, written discovery. And it's customary that all those are done within a month of the case being opened. So the issue isn't whether or not an attorney is going to purposely try to run through all their retainer. The issue is there are significant fees that are incurred at the beginning, which may eat through the retainer. And if that's the case where you prepare these petitions, then it's customary to file a petition for allocation of marital expenses right along with a petition for dissolution of marriage. So essentially, you may have billed against a substantial part of the retainer already prior to the other party even being served. So if it's a low-asset case and that other party, the petitioner, has used marital assets to pay their attorney and pay their retainer, and those funds are gone, then the other party, once they're served, may file a petition for interim fees. And if the attorney's earned it and the court finds that those funds aren't available, there won't be any ability to award interim fees. Parties would lack the ability and there would be no discouragement, leaving the party that just got served to struggle to find an attorney. That also would defeat the purpose. So I think it should be clear. I don't believe that it's just an issue of whether or not a family law attorney is going to run through their retainer. I think there is a practical and legitimate consideration that there are substantial fees that may be incurred at the beginning. And then, of course, you start to go through your case and you have your case manager conferences. And then fees may calm down a little bit until you start to really address reviewing through discovery once it's been disclosed and going through some discussions and depositions and the like. Mr. Ellis, the opposing counsel said there were monies available. Does your client still have the retirement funds available? Those retirement funds were awarded to her. There was a judgment of dissolution of marriage that was entered in this matter. And those funds were awarded to her pursuant to the judgment of dissolution of marriage to make up for what had already been liquidated by Dr. Gaysen. But there were funds available to pay attorneys' fees at the time. There were assets. I don't know that her retirement funds would have been available because she hadn't. She had accessed them once for purposes of support, I believe, in November or December of 2013. She hadn't accessed her retirement accounts otherwise because there was an issue with, again, with Dr. Gaysen paying support and it was being litigated by a prior counsel. I don't know that Ms. Howell was in the case. She may have just gotten the case together. So essentially, it represents a court of judgment, essentially awarded all assets to Ms. Gaysen, except for the property they had in Florida, which was awarded to Dr. Gaysen. Counsel also raised the issue of attorneys have the right to contract and the court would be infringing upon an attorney's right to contract. The IMDMA already imposes restrictions on an attorney's ability to contract with a client. First of all, counsel raised that you can pay the security retainer, you bill against the retainer, while the contract's customary to say, you're paying this retainer, any fees you incur will be billed against this. So by the very nature of the statute then, disgorging even unearned fees would be contrary to that contract. But of course the statute allows them another chance to provide for the purpose of the statute. We're going to allow that disgorgement to occur, even if there's no argument, even if there are funds remaining in the security retainer. Also, under the IMDMA, there are no contingent fee contracts in divorce cases. An attorney cannot contract that way with a client. So it's already been found that under divorce cases, dissolution of marriage cases, an attorney's right to contract with a client may be affected by the statute. Counsel raises the issue that, well, if you're already in a disgorgement position, meaning a court has already found that both sides lack the ability to pay, how realistic is it that that attorney that's being disgorged is going to get paid at the end of the case? That's certainly a legitimate concern. But the purpose of the statute is to provide for substantial parity among both attorneys. So if you're in a situation under a disgorgement scenario where one attorney is worried they're going to get paid at the end of the case because they're being disgorged, it certainly stands to reason that the other attorney that hasn't been paid as much can't expect to stay in the case the whole time and not get any further interim fees. Because then, as Amiki brought up, Amiki brought up the issue that you would shift the burden to the attorney that's being disgorged. If those funds are found to be unavailable, you're shifting the burden completely to the attorney that was asking for interim fees. Because they're not going to get fees, they're not going to be as a matter of parity with the other attorney. So that leads to the question of under the statute, who has the priority? Under the statutory framework, under 501 and 508, whose rights not necessarily are addressed, but whose rights come first? And the legislature chose to put the rights of the party first. That's why final fees for attorneys are addressed at the end of the case. Interim fees are addressed on a summary basis during the case, knowing that they're subject to being reallocated. There are advances against the mayoral estate, but they won't be reallocated at the end of the case. So the statute already sets up the framework. It tells this court who should come first. The attorneys may have legitimate concerns. Certainly all of us would have concerns whether or not we're getting paid or if we earn funds, fees, and are expected to repay them. Those are legitimate concerns. But the statute puts the parties first. And that's why those funds should be available for disbursement. Thank you. Thank you. Case number 122046 in remarriage of Geisel. Geisel will be taken under advisement as agenda number 17. Mr. Ellis, Mr. Kalula, Ms. Kalula, we thank you for your arguments today. You are excused. Thanks.